UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| CANDACE LE SHEL BROCK, <br><br> Plaintiff, <br><br> V. <br><br> NANCY A. BERRYHILL, Deputy Commissioner of Operations of the Social Security Administration,* <br><br> Defendant. | Civil Action No. 6: 17-241-DCR <br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Candace Le Shel Brock (hereafter, "Brock" or "the Claimant") and Defendant Nancy A. Berryhill, Deputy Commissioner of Operations of the Social Security Administration (hereafter, "the Commissioner.") [Record Nos. 13, 15] Brock argues that the Administrative Law Judge ("ALJ") erred in concluding that she was not disabled within the meaning of the Social Security Act ("Act"). Specifically, she asserts that the ALJ failed to properly evaluate the opinion evidence and her subjective complaints of pain. She also argues that the ALJ's decision was not supported by substantial evidence. Brock asks this Court to direct the Commissioner to award her benefits or, alternatively, to remand the matter for further

---

* Nancy A. Berryhill was the Acting Commissioner of Social Security beginning January 23, 2017. Her acting status ended as a matter of law pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq.*, and she returned to her position of record, that of Deputy Commissioner for Operations, in November 2017. In accordance with the agency's Order of Succession, Berryhill continues to lead the SSA as it awaits the nomination and confirmation of a Commissioner. https://www.ssa.gov/agency/commissioner.html (last visited Apr. 5, 2018).

consideration before a new ALJ. The Commissioner contends that the ALJ properly evaluated the evidence and that the ALJ's decision should be affirmed because it is supported by substantial evidence. For the reasons that follow, The Commissioner's motion will be granted the relief sought by Brock will be denied.

## I. Procedural History

Brock filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act on September 23, 2013. [*See* Administrative Transcript, hereinafter "Tr.," 458.] She alleged an onset of disability of August 14, 2013. *Id.* After the application was denied initially and upon reconsideration, Brock requested a hearing before an ALJ. [Tr. 362, 366, 376] She appeared before ALJ Michael A. Lehr for video hearings on December 10, 2015, and March 31, 2016. [Tr. 265-89, 251-64] ALJ Lehr denied benefits in a written decision on May 2, 2016, which the Appeals Council later affirmed. [Tr. 219-37, 1-4] Accordingly, the Claimant has exhausted her administrative remedies and this matter is ripe for review under 42 U.S.C. § 405(g).

## II. Background

Brock was thirty-one-years-old and was married with two young children at the time of the ALJ's decision. [Tr. 270, 237, 271] She had obtained her GED and had completed some online college courses, but had never worked anywhere "for more than a day or two." [Tr. 270] She claimed that she was unable to work due to inflammatory bowel disease, bipolar disorder, anxiety, depression, fibromyalgia, osteomyelitis, and chronic fatigue syndrome. [Tr. 269]

Brock alleged that her most limiting condition was fibromyalgia, which caused difficulty with sitting, standing, and walking. [Tr. 272] She described the pain as a constant

ache and burning throughout her body. [Tr. 554] She estimated that she could sit and stand for ten to fifteen minutes and stated that she had to lie down eight to ten times per day. [Tr. 274] Brock reported that some days, she stayed in bed because she could not move. [Tr. 275] She also testified that she had difficulty picking up items and that she would have trouble holding a pen or typing on a keyboard. [Tr. 276]

Brock advised the ALJ that she had experienced stomach problems since she was a teenager. [Tr. 276] She reported frequent cramping and nausea and stated that she spent "a big part of the day" in the bathroom. [Tr. 277] She also reported severe mood swings and depression. [Tr. 280-81] Brock described going shopping as a "horrible experience" and reported that she had panic attacks and problems concentrating. [Tr. 281] She reported that she rarely left the house due to these problems. [Tr. 3437]

Brock first received inpatient mental health treatment at the age of 14 after expressing suicidal thoughts. [Tr. 593] She was diagnosed with major depression with psychotic features and began taking medication to manage the symptoms. *Id.* She also began outpatient counseling, which she continued sporadically throughout the years, and was given a good prognosis. *Id.* Pam Wenger, a psychiatric-mental health nurse practitioner ("PMHNP") managed Brock's medications and Brock attended individual counseling sessions at Cumberland River Comprehensive Care Center ("CRCC") from 2008 through 2011. [Tr. 814-927] Later, she returned to CRCC and received psychiatric treatment in 2013. [Tr. 2094-2123]

Brock was treated by numerous doctors from 2012 through 2016, including several primary care physicians and specialists in gynecology, rheumatology, and gastroenterology. Brock visited the emergency department frequently over the years, often complaining of

abdominal pain. [Tr. 708, 711, 713, 1307] Gastroenterologist Rehana Begum, M.D., evaluated Brock in 2008. [Tr. 736] A gastric biopsy indicated that Brock had moderate chronic gastritis, but there was no evidence of acute inflammation or intestinal metaplasia. [Tr. 744] An upper endoscopy with biopsy and a colonoscopy with biopsy also were performed. [Tr. 760] This examination and testing revealed minimal gastritis, grade I reflux esophagitis, and mild hemorrhoidal irritation. [Tr. 761] A follow-up colonoscopy in 2010 was essentially unremarkable. [Tr. 800] Serologic testing performed in 2012 was not consistent with inflammatory bowel disease. [Tr. 937]

Brock also treated with Ashok Kanthawar, M.D., a digestive and liver specialist, in 2012. [Tr. 1242] Kanthawar diagnosed irritable bowel disease, morbid obesity, and elevated liver enzymes. [Tr. 1243] In addition to ordering further studies, he advised Brock to lose weight and to "consider antidepressants." [Tr. 1245-46] Brock saw another gastroenterologist, Morris Beebe, M.D., in 2014. [Tr. 2445] Beebe started medications to address Brock's complaints of nausea, diarrhea, and abnormal liver function. [Tr. 2448] A subsequent colonoscopy with biopsies of the duodenum, antrum, and colon appear to have been within normal limits. [Tr. 2457]

Brock presented for a rheumatology evaluation with Scott Lewis, M.D., in September 2013. [Tr. 2275] She advised Lewis that she had pain in her neck, back, hips, chest, arms, fingers, legs, shoulders, hands, and feet. *Id.* She had 18 out of 18 tender points, but her upper extremity strength was five out of five and lower extremity strength was four out of five. [Tr. 2277] Lewis diagnosed her with myalgia and myositis, unspecified, and polyarthralgias/fibromyalgia. [Tr. 2277-78] He discussed with her the need for non-pharmacologic management such as stress reduction, sleep hygiene, and exercise. *Id.*

Louie Williams, M.D., a rehabilitation specialist, treated Brock in 2015. [Tr. 3080-3140] Brock complained at that time of insomnia, numbness and tingling, chronic pain, fatigue, and IBS symptoms. [Tr. 3080] She alleged that, at times, she had trouble rolling over in bed. [Tr. 3135] Williams commented that Brock had either a severe case of fibromyalgia or "something else [was] going on as well." [Tr. 3138] She had fourteen out of eighteen trigger points and an MRI scan of her brain was unremarkable. [Tr. 3124, 3127] Williams administered Toradol injections and prescribed pain medication. [Tr. 3128] Brock advised Williams that she had to terminate physical therapy because she "went numb from the waist down." [Tr. 3113] Williams recommended water therapy, but Brock stated that it was not available near her home. *Id.*

None of Brock's treating sources provided an opinion regarding her functional abilities. The ALJ sought the opinion of Subramaniam Krishnamurthi, M.D., regarding Brock's physical impairments. [Tr. 3281] After reviewing Brock's file, Krishnamurthi reported that Brock could frequently lift or carry up to 10 pounds, could occasionally lift or carry 11 to 20 pounds, but could never lift or carry over 20 pounds. [Tr. 3285] He also believed that she could sit for two hours without interruption and stand or walk for one hour without interruption. Krishnamurthi opined that Brock could sit for a total of six hours in an eight-hour workday, but could stand or walk for a total of only three hours in an eight-hour workday. [Tr. 3286] He reported that Brock could frequently perform activities with her upper extremities and feet and that she could occasionally climb, balance, stoop, kneel, crouch, and crawl. [Tr. 3287-88] Finally, he concluded that she could frequently tolerate exposure to environmental hazards and that she could sort, handle, and use paper and files. [Tr. 3289-90].

Leigh A. Ford, Ph.D. examined Brock in March 2016 and provided a mental health assessment. [Tr. 3436] Brock maintained eye contact with Ford during the examination, although Brock's affect appeared flat and her mood appeared anxious and pessimistic. [Tr. 3437] No preoccupation of thought was apparent, and organization of thought was logical and goal-oriented. *Id.* Brock appeared to have some gaps in insight, but recognized that she had some difficulty making decisions. Ford administered the Wechsler Adult Intelligence Scale-Fourth Edition. Brock's full-scale IQ was 75, falling within the borderline range of cognitive abilities. [Tr. 3438] Her verbal comprehension index scale, a measure of acquired knowledge, verbal reasoning, and attention to verbal materials, was 85, falling within the low-average range. *Id.* Likewise, her perceptual reasoning index score was within the low-average range, while her working memory index was within the average range. *Id.* Brock's processing speed index, which measures an individual's ability to process visual information quickly, fell within the extremely low range. *Id.*

Ford also administered the WRAT-4 to assess Brock's academic functioning in the areas of reading and math. Brock displayed average reading skills and low-average math skills. [Tr. 3439] Ford concluded that Brock's ability to understand, remember, and carry out simple instructions was mildly limited. [Tr. 3441] Her ability to make judgments on simple work-related decisions was also mildly limited. *Id.* Ford opined that Brock's ability to perform these tasks with respect to complex instructions was moderately limited. *Id.* She also believed that Brock's ability to interact appropriately with the public, supervisors, and co-workers was moderately limited. [Tr. 3442] Finally, Ford reported that Brock's ability to respond appropriately to usual work situations and to changes in a routine work setting would be limited to a moderate degree. *Id.*

The ALJ concluded that Brock had the following severe impairments: irritable bowel syndrome (IBS); hypothyroidism; obesity; obstructive sleep apnea; fibromyalgia; degenerative disc disease of the lumbar spine; degenerative joint disease of the knees; bipolar disorder; and borderline intellectual functioning. [Tr. 224] He determined, however, that none of Brock's impairments or combinations thereof met or medically equaled a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 225] After reviewing the medical record and conducting two hearings, the ALJ determined that Brock had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(c) except she could:

> occasionally climb, balance, stoop, kneel, crawl, crouch and she can perform no climbing of ropes, ladders, or scaffolds. She can have no concentrated exposure to temperature extremes, vibration, work hazards and she needs normal access to restrooms. The claimant can perform no use of foot controls and she can frequently use both upper extremities for fine fingering, handling, and reaching. She is limited to simple, unskilled work of a routine and repetitive nature, where there will be no contact with the general public and only occasional contact with co-workers and supervisors.

[Tr. 227] Based on this RFC, the ALJ concluded that jobs existed in significant numbers in the national economy that Brock could perform and that she was not under a disability. [Tr. 236]

### III. Standard of Review

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. §

404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work. 20 C.F.R. § 416.920(e). If she can, she is not disabled. 20 C.F.R. §416.920(f).

If the claimant's impairments prevent her from doing past work under the fifth step of the analysis, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching her decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV. Discussion

### A. The ALJ's Failure to Incorporate Previous Limitations

Brock filed an application for SSI benefits in 2011, which ALJ Jim Beeby denied in a written decision on August 13, 2012. [Tr. 290-301] ALJ Beeby determined that Brock could perform light work, as defined in 20 C.F.R. § 416.967(b), except (as relevant here) she could sit and stand and/or walk for six out of eight hours. [Tr. 297] Brock contends that ALJ Lehr erred by failing to incorporate these limitations into the most recent RFC. *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997). The Commissioner argues, however, that these limitations are inherent in the current RFC and, as a result, the ALJ did not err by failing to state them explicitly. Indeed, a full range of light work requires standing or walking for a total of approximately six hours in an eight hour workday. SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).

Brock also argues that the ALJ erred by failing to restrict her to an "object-focused" work setting, as stated in the previous RFC. But as the Commissioner points out, unskilled work, by its very nature, involves work with objects, rather than people or data. SSR-85-15, 1985 WL 56857 (Jan. 1, 1985). Accordingly, the previous limitations on standing, walking,

and object-focused work are inherent in the current RFC, which limits Brock to light unskilled work. [Tr. 236]

The ALJ's failure to explicitly incorporate the six-hour limitation on sitting was harmless error. A job is in the light-work category when it requires a "good deal" of walking or standing or, when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 416.967(b). The ALJ eliminated a portion of potential light-work "sitting" jobs because he restricted Brock from the use of foot controls. [Tr. 227] Additionally, Brock is limited to unskilled work and SSR 83-10 makes clear that "[r]elatively few unskilled light jobs are performed in a seated position." 1983 WL 31251, at *5.

The ALJ presented the RFC to a vocational expert ("VE") during the administrative hearing. The VE then testified regarding the type of work that Brock would be able to do despite her limitations. According to the VE, someone with Brock's RFC would be able to perform the requirements of the following unskilled light occupations: retail marker; electronics set assembler; and bench assembler. She also testified that these jobs existed in the following numbers in the national economy: 130,000; 90,000; and 150,000, respectively. While it is likely that a sit/stand option is available in some of these positions, *see, e.g., Baker v. Comm'r of Soc. Sec.*, No. 12-cv-14530, 2013 WL 6409955, at *10 (E.D. Mich. Dec. 9, 2013), there is no indication that these jobs *require* the employee to sit—let alone for more than six hours in an eight-hour workday. *See* 1983 WL 31251, at *5. Accordingly, inclusion of the six-hour sitting restriction would not change the determination that Brock was not disabled.

### B. The ALJ's Consideration of Opinion Evidence

Brock also argues that the ALJ failed to properly consider the restrictions assessed by consulting sources Leigh Ford and Subramaniam Krishnamurthi. The opinions of a one-time consulting source are not entitled to any particular weight. Instead, they are afforded weight according to the factors set out in 20 C.F.R. § 416.917, which include: whether they are supported by objective findings; whether they are consistent with the record as a whole; and the extent of the source's relationship with the claimant.

The ALJ indicated that he assigned "substantial weight" to the opinions of Ford and Krishnamurthi because he found them to be well-supported and consistent with the record as a whole. The RFC is largely consistent with Ford's and Krishnamurthi's opinions and, in some respects, more restrictive. The ALJ did not dissect these opinions line-by-line, nor was such analysis required. An ALJ is not under any special obligation to explain why he elected not to defer to a non-treating physician. *See Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011). Accordingly, the ALJ did not err in his consideration of the consulting sources' opinions.

### C. The Claimant's Subjective Complaints of Pain

Brock contends that the ALJ failed to properly evaluate her credibility and subjective complaints under 20 C.F.R. § 416.929 and SSR 96-7p, 1996 WL 374186 (July 2, 1996). However, SSR 16-3 superseded SSR 96-7p in March 2016, eliminating the term "credibility" from the evaluation process. 2016 WL 1119029 (March 16, 2016). Upon review of the ALJ's written decision, it is clear that he applied the appropriate two-step inquiry for evaluating Brock's subjective complaints. The ALJ first determined that Brock had medically determinable impairments that could reasonably be expected to cause the symptoms she alleged. *See* 20 C.F.R. § 416.929(b); 2016 WL 1119029, at *3. [Tr. 228] Specifically, he

concluded that her medical history included IBS and gastroesophageal disorder ("GERD") with stomach ulcers. *Id.* He also noted that she was diagnosed with hypothyroidism, obesity, obstructive sleep apnea, fibromyalgia, headaches, degenerative disc disease, degenerative joint disease, depression, and bipolar disorder. [Tr. 228-232] The ALJ concluded, however, that Brock's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. [Tr. 228]

As the ALJ explained in some detail, numerous diagnostic tests were largely unremarkable. *See* 20 C.F.R. § 416.929 (c)(2). While a pathology specimen was positive for minimal chronic gastritis, an endoscopy, colonoscopy, and CT scan were all normal. [Tr. 228-299] Cervical and lumbar x-rays were largely unremarkable, although a 2014 lumbar MRI revealed disc desiccation and "mild spondylosis without stenosis." [Tr. 231, 2762] Treatment notes from March 2015 indicate that Brock complained of pain "all over" and scattered numbness and tingling. She also complained of decreased light touch sensation in a "non-organic pattern." [Tr. 2781] A CT scan of her head and nerve conduction tests of her right upper and lower extremities were normal. [Tr. 2780]

The ALJ recognized that, to the extent Brock's statements regarding the limiting effects of her pain were not substantiated by objective medical evidence, he was required to consider other evidence in the record to determine whether her symptoms limited her ability to perform work-related activities. *See* 20 C.F.R. § 416.929(c)(3). [Tr. 227] Specifically, he looked at Brock's activities of daily living; the location, duration, frequency, and intensity of her pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications taken to alleviate the pain; treatment, other than medication, for relief of pain or

other symptoms; and any other factors concerning functional limitations and restrictions due to pain or other symptoms produced by medically determinable impairments. [Tr. 228] The ALJ noted that Brock has never engaged in substantial gainful activity, but that she took care of an infant all day—feeding him, changing his diaper, and performing light housework. [Tr. 227] Further, the record indicates that medications helped alleviate the symptoms of Brock's fibromyalgia and she has never required the use of any assistive devices. [Tr. 230-32, 2507]

The ALJ discussed substantial evidence that conflicted with Brock's allegations concerning the severity of her pain and symptoms. *See* 2016 WL 1119029, at *6-*8. [Tr. 235] For instance, Brock sought pain medication from Harlan ARH in April 2014, telling the provider there that she had been without medication for several months. [Tr. 235, 2514] When a KASPER report revealed that she had received narcotic medications the previous month, she claimed that she did not remember and that she did not know the providers who wrote the prescriptions. [Tr. 235, 2515] The provider at Harlan ARH ultimately advised her that she would need to seek treatment elsewhere. *Id.* On another occasion, Brock called Dr. Williams requesting refills on Adderall, Norco, and gabapentin, but Williams refused because Brock recently had been a no-show and then canceled her last appointment. [Tr. 3082-85] Additionally, Brock declined Williams' recommendation to participate in water therapy because "no one close to her" offered it, but Williams remarked that Brock lived almost four hours from his office. [Tr. 3108]

Based on the foregoing, the ALJ's evaluation of Brock's subjective complaints was consistent with 20 C.F.R. § 416.929 and SSR 16-3p, and the ALJ reasonably determined that the evidence did not support her allegations of pain and symptoms. Further, the ALJ gave

specific reasons for findings and cited specific evidence in the record in reaching this conclusion.

### D. Substantial Evidence Supports the ALJ's Decision

Finally, Brock argues that the ALJ's decision is not supported by substantial evidence. Apparently, in an attempt to prove this point, the Claimant has devoted over half of her summary judgment brief to reciting excerpts from the administrative record. [Record No. 13-1, pp. 2-16] Unfortunately, these medical records shed little light on the issues relevant to this appeal. Clearly, the Claimant had many physical and psychological concerns and sought medical care frequently during the time in question. But this does not mean that the Commissioner's decision was not supported by substantial evidence.

State psychological consultant Larry Freudenberger, Psy.D., reviewed Brock's file on March 18, 2014. [Tr. 354] He concluded that Brock's ability to carry out very short and simple instructions, as well as detailed instructions was not significantly limited. [Tr. 352] Additionally, he believed that she had no significant limitations with respect to performing activities within a schedule, maintaining regular attendance, and being punctual. [Tr. 353] However, he commented that her ability to complete a normal workday and workweek without interruptions from psychological symptoms would be moderately limited. *Id.* He also believed she would have moderate difficulty interacting with the general public and coworkers. [Tr. 353]

The ALJ relied on the opinions of Freudenberger and Leigh Ford in determining the mental RFC, and incorporated some of the more restrictive limitations assessed by Ford. For example, Brock was limited to performing simple, repetitive tasks. And consistent with both sources' recommendations, Brock's interaction with the public and others was restricted. The

ALJ reasonably concluded that Brock's psychological symptoms were not as severe as she alleged at times because she declined the treatment that was offered to her on multiple occasions. [Tr. 233] Additionally, her symptoms improved when she stayed on medication consistently. *Id.*

Substantial evidence also supports the ALJ's decision with respect to the physical portion of the RFC. State agency consultant Robert Brown, M.D., reviewed Brock's file on March 20, 2014. [Tr. 352, 355] He concluded that her physical limitations had not progressed since the previous agency determination. Therefore, the RFC assigned in 2012 should apply. *See id.* The 2012 RFC provided that Brock could perform light work, as defined in 20 C.F.R. § 416.967(b), except she could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. [Tr. 297] In addition to six-hour limitations on standing, walking, and sitting, the RFC provided that she could occasionally bend, crouch, stoop, crawl, and climb stairs and ramps. [Tr. 297]

Although the ALJ did not adopt each limitation included in Krishnamurthi's assessment, he incorporated many of the recommended limitations, including restrictions on lifting and environmental hazards. As a result, the 2016 RFC is more restrictive than the 2012 RFC in significant respects. Importantly, ALJ Lehr specified that the claimant needs access to restrooms. The ALJ also was mindful of Brock's lower extremity complaints when he added a restriction regarding the use of foot controls. Reasonable minds would accept the foregoing evidence as sufficient to support the Commissioner's conclusion. Accordingly, her decision will be affirmed. *See Bass* at 509.

## V. Conclusion

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. Plaintiff Candace Le Shel Brock's Motion for Summary Judgment [Record No. 13] is **DENIED**.

2. Defendant Deputy Commissioner of Operations of the Social Security Administration Nancy A. Berryhill's Motion for Summary Judgment [Record No. 15] is **GRANTED**.

3. The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 6th day of April, 2018.

Signed By:
*Danny C. Reeves* DCR
United States District Judge